IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| GREATER EDWARDS AQUIFER ALLIANCE, *et al.*, <br><br> Plaintiff, <br><br> v. <br><br> LENNAR HOMES OF TEXAS LAND AND CONSTRUCTION, LTD., <br><br> Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) Case No. 1:20-cv-00747 _____. |

# COMPLAINT

Plaintiffs Greater Edwards Aquifer Alliance ("GEAA"), Bulverde Neighborhood Alliance, and Shawn and Eddie Langford (referred to herein collectively as "Plaintiffs") by and through their counsel, alleges as follows:

1. This is a citizen suit brought suit under Section 505(a) of the Clean Water Act ("CWA") against Lennar Homes of Texas Land and Construction, Ltd. ("Lennar") based on its development of "4S Ranch," which is comprised of approximately 775 acres of land proposed to be used for a combination of commercial and residential purposes (the "Development"). This property is immediately northwest of the City of Bulverde, Texas.

2. Plaintiffs seek a declaratory judgment, injunctive relief, the imposition of civil penalties, and the award of costs, including attorneys' and expert witness fees, for Lennar's violations of the CWA.

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction over the parties and subject matter of this

action pursuant to Section 505(a)(1) of the CWA, 33 U.S.C. § 1365(a)(1), 28 U.S.C. § 1331, and 28 U.S.C. § 2201

4. On October 30, 2019, as required by the CWA, 33 U.S.C. § 1365(b)(1)(A), Plaintiffs provided notice of intent to file suit against Lennar for CWA violations ("Notice Letter") to Lennar and the Administrator of the United States Environmental Protection Agency ("EPA"), the Regional Administrator of EPA Region VI; the Attorney General of the United States, the Chairman, Commissioners, and Executive Director of the Texas Commission on Environmental Quality ("TCEQ") (collectively "state and federal agencies."

5. The Notice Letter provided Lennar with sufficient information to determine: (i) the CWA requirements GEAA alleges Lennar violated; (ii) the activity alleged to constitute the violation(s); (iii) sufficient information to determine the date, location, and person responsible for the violation(s); and (iv) the contact information for Plaintiff and Plaintiff's Counsel. A copy of the Notice Letter is attached as Exhibit 1.

6. More than sixty (60) days have passed since notice of the alleged violation was served upon Lennar and the state and federal agencies. Neither the EPA nor the state of Texas has commenced or is diligently prosecuting a court action to redress the violations alleged herein. No claim in this action is barred by any prior administrative action pursuant to Section 309(g) of the CWA, 33 U.S.C. § 1319(g).

7. Venue is proper in the Western District of Texas pursuant to Section 505(c)(1) of the CWA and 33 U.S.C. § 1365(c)(1), because the source of the violations is located within this judicial district.

## PARTIES

8.  Lennar is participating in the Development, which commenced in or about March 19, 2018. Lewis Creek drains central portions of the Development, while certain Western portions of the Development drain into a tributary of Lewis Creek.

9.  GEAA is a nonprofit membership association of the State of Texas that promotes the protection and preservation of the Edwards Aquifer, as well as its springs, watersheds, and the Texas Hill Country that sustains it.

10. Bulverde Neighborhood Alliance is an organization that seeks to protect the air, land, and water of the Bulverde area, as well as any areas impacted by its land development.

11. Shawn and Eddie Langford reside at 4385 High Noon Drive, Bulverde, Texas. They are the trustees of the Eddie and Shawn Langford Revocable Trust, which owns roughly 15 acres at that location upon which the Langfords reside (the "Langford Property"). Under both natural and developed conditions, certain western areas of the Development drain onto the Langford Property, thence to Lewis Creek.

12. Additionally, Plaintiffs act in the interest of the general public to prevent pollution of the Edwards Aquifer, Lewis Creek, and related waterways, for the benefit of their ecosystems, and for the benefits of all individuals and communities who use these waterways for various recreational, educational, and spiritual purposes.

## THE CLEAN WATER ACT

13. Congress enacted the CWA to "restore and maintain the chemical, physical, and biological integrity of the Nation's waters." 33 U.S.C. § 1251(a). To achieve this goal, the Act prohibits "the discharge of any pollutant" into navigable waters, except as authorized by the CWA.

33 U.S.C. § 1311(a).

14. The CWA establishes the National Pollutant Discharge Elimination System ("NPDES") under which the Administrator of the EPA or an authorized State can issue NPDES permits, which allow the lawful discharge of pollutants subject to certain conditions. 33 U.S.C. § 1342. In Texas, the TCEQ has the authority to issue NPDES permits through the TPDES permitting program.

15. TPDES permits impose limitations on the discharge of pollutants, and establish related monitoring and reporting requirements, in order to improve the cleanliness and safety of the Nation's waters. Each violation of a TPDES permit violates the CWA and is grounds for enforcement action. 33 U.S.C. §§ 1311(a), 1365(f).

16. The holder of a TPDES permit is subject to both federal and state enforcement action for failure to comply with the limitations imposed in the permit. 33 U.S.C. §§ 1319, 1342.

17. Clean Water Act § 402(p) (33 U.S.C. 1342(p)) requires permits for stormwater discharges from either industrial or municipal activities. The EPA has implemented this requirement by the promulgation of 40 Code of Federal Regulations ("C.F.R.") § 122.26.

18. A storm water discharge associated with industrial activity is defined in these regulations, at 40 CFR § 122.26(b)(14)(x), to include construction activity disturbing more than five acres. The regulation explicitly provides that this includes clearing, grading and excavation activities. Application requirements for storm water discharges associated with industrial activity, including construction activities disturbing more than five acres, are established at 40 CFR § 122.26(c).

19. The Clean Water Act at § 301(a) (33 U.S.C. 1311) establishes that no discharge of

pollutants into a water of the United States is allowed except in compliance with the requirements of that Act, including the requirements of CWA § 402 (33 U.S.C. § 1342).

20. Thus, the requirements of authorizations contained in a general permit are enforceable through a citizen suit under § 505 (33 USC § 1365) of the federal Clean Water Act.

21. Lennar holds Registration No. TXR15216K for construction at the site of the Development, under Texas Construction Activities General Permit TXR150000 "General Permit."

22. The requirement that a permittee develop and implement a stormwater pollution prevention plan ("SWPPP"), set forth at Part III of TXR150000, is one of the federally enforceable terms of the General Permit issued under TCEQ's delegated authority to implement CWA § 402(p).

23. Among other requirements, the General Permit requires that the permittee design, install, and maintain effective erosion controls and sediment controls to minimize the discharge of pollutants as the result of construction activities.[1] To this end, the General Permit requires the development of a SWPPP, which must be implemented prior to commencing construction activities that result in soil disturbance.[2] All protective measures in the SWPPP must be maintained in effective working condition.[3]

24. For activities disturbing more than ten acres at a time, the SWPPP must include a sedimentation basin providing sufficient storage to contain the volume of runoff from a 2-year, 24-hour storm event from each disturbed acre drained.[4] Furthermore, controls must be developed

---

[1] TXR150000, Condition III(G)(1).
[2] TXR150000, Condition III(C).
[3] TXR150000, Condition III(F)(6)(a).
[4] TXR150000, Condition III(F)(2)(c)(i)(A)(1).

to minimize the offsite transport of litter, construction debris, and construction materials.[5] Disturbed areas must be stabilized where earth disturbing activities have either ended, or temporarily ceased for more than fourteen days.[6]

## CWA CITIZEN ENFORCEMENT

25. The CWA authorizes any citizen to file a civil action to enforce an effluent standard in an NPDES (or TPDES) permit, subject to certain limitations. 33 U.S.C. § 1365(a)(b).

26. Subsection (a) of the citizen suit provision, entitled "Authorization; jurisdiction," instructs: "Except as provided in subsection (b) of this section..., any citizen may commence a civil action on his own behalf... against any person... who is alleged to be in violation of... an effluent standard or limitation under this chapter." 33 U.S.C. § 1365(a)(1).

27. The CWA defines the term "an effluent standard or limitation under this chapter" to mean, among other things, "a permit or condition thereof issued under, which is in effect under [section 402 of the CWA]." 33 U.S.C. § 1365(f).

28. CWA section 505, 33 U.S.C. § 1365, empowers citizens to seek remedies for unpermitted discharges violating Section 301 of the CWA, 33 U.S.C. § 1311, and for violations of NPDES permit conditions. This section also authorizes citizens to seek injunctive relief.

29. For violations occurring and assessed after January 15, 2019, each separate violation of the CWA subjects the violator to a penalty of up to $54,833 per day per violation, pursuant to sections 309(d) and 505(a) of the CWA. 33 U.S.C. §§ 1319(d), 1365(a), and 40 C.F.R. § 19.4 (2009) (Adjustment of Civil Monetary Penalties for Inflation).

---

[5] TXR150000, Condition III(F)(2)(a)(iii).
[6] TXR150000, Condition III(G)(2).

## FACTUAL BACKGROUND

30. Immediately adjacent to the Langford Property, Lennar has constructed a detention pond that concentrates runoff from certain western portions of the Development (herein referenced as "Detention Basin D"). This basin now directs runoff from the Development onto the Langford Property. The contributing areas to that pond include areas where construction activities were occurring as of October 24, 2019, and continue to occur.

31. On May 8, 2019, a rainfall event occurred which resulted in the runoff of storm water from the Development in Lewis Creek. This storm water escaping the Development contained significant quantities of suspended solids.

32. More recently, on October 24, 2019, a precipitation event occurred at the Development. As a result of this event, approximately 4.1 inches of rain fell within the span of less than six hours. Based upon the National Oceanic and Atmospheric Administration ("NOAA") Atlas 14, this rainfall event was roughly equivalent to the magnitude of the 2-year, 24-hour storm event for this location.[7]

33. As a result of this rainfall event, significant quantities of storm water runoff, containing a large amount of sediment, escaped the Development. Much of this escaping sediment consequently impacted water features on the Langford Property, and was deposited upon broad areas of the Langford Property, as illustrated in the photographs below.

34. Additionally, in violation of the General Permit, disturbed soils in significant areas of the Development have not been stabilized despite the cessation of soil disturbance in those areas

---

[7] https://hdsc.nws.noaa.gov/hdsc/pfds/pfds_map_cont.html?bkmrk=ne , at 29.765555° N, 98.391944° W.

for more than fourteen days.  Likewise, construction debris and litter has been deposited upon the Langford property as a result of construction activities at the Development, and runoff from the Development.

35. Photographs of the impacts of the rain events are provided in Exhibit 1.

## ALLEGED CWA VIOLATIONS

36. Lennar has violated CWA § 301 by discharging pollutants in violation of General Permit TXR150000, and continues to be in violation of that section.  Violations include:

    a.    March 19, 2018 to present – Lennar failed to develop a SWPPP prior to the commencement of construction that minimizes to the extent practicable the discharge of pollutants in stormwater associated with construction activity and non-stormwater discharges, Condition III;

    b.    March 19, 2018 to present – Lennar commenced construction activities resulting in soil disturbance prior to implementation of SWPPP, Condition III(C);

    c.    May 8, October 24, and October 25, 2019, with likely recurrence upon subsequent rainfall events – Lennar failed to adequately contain rainfall on site resulting from a 2-year, 24- hour storm event, Condition III(F)(2)(c)(i)(A)(1);

    d.    May 8, October 24, and October 25, 2019, with likely recurrence upon subsequent rainfall events – Lennar failed to implement measures to sufficiently prevent the offsite transport of litter, construction debris, and construction materials, Condition III(F)(2)(a)(iii);

    e.    October 23, 2019 to present – Lennar failed to maintain control measures at the Development in effective working condition, Condition III(F)(6)(a);

   f. May 8, October 24, and October 25, 2019, with likely recurrence upon subsequent rainfall events – Lennar discharged pollutants including suspended solids, thereby failing to minimize the discharge of pollutants, Condition III(G)(1);

   g. March 19, 2018 to present – Lennar has failed to stabilize soils in areas where soil disturbance has ceased for more than fourteen days, Condition III(G)(2).

37. As identified above, each of these violations is either ongoing, or is anticipated to recur upon subsequent rainfall events.  If maximum penalties were imposed, this would result in penalties in excess of $1,000,000.

**FIRST CAUSE OF ACTION**

**Failure to Develop and Implement an Adequate SWPPP, in Violation of General Permit TXR150000**

38. Plaintiffs incorporate the allegations contained in all other paragraphs as though fully set forth herein.

39. General Permit TXR150000 requires dischargers of stormwater associated with construction activity to develop and implement an adequate SWPPP when they commenced construction activity.

40. Lennar has failed and continues to fail to develop and implement an adequate SWPPP or implement all necessary revisions to the SWPPP for the Development as required by General Permit TXR150000.

41. By committing the acts and omissions alleged above, Lennar is subject to an assessment of civil penalties pursuant to CWA sections 309(d) and 505, 33 U.S.C. §§ 1319(d) and 1365.

42. An action for injunctive relief is authorized by CWA section 505(a), 33 U.S.C. § 1365(a). Continuing commission of the acts and omissions alleged above will irreparably harm GEAA for which harm it has no plain, speedy, or adequate remedy at law.

43. An action for declaratory relief is authorized by 28 U.S.C. § 2201(a) because an actual controversy exists as to the rights and other legal relations of the Parties.

## **RELIEF REQUESTED**

Plaintiffs respectfully request this Court to grant the following relief:

A. Declare Lennar to have violated and to be in violation of sections 301(a) and (b) of the Clean Water Act, 33 U.S.C. §§ 1311(a) and (b), for failing to adequately maintain and implement an SWPPP for the Development;

B. Enjoin Lennar from violating the substantive and procedural requirements of General Permit TXR150000 at the Development;

C. Order Lennar to pay civil penalties of up to $46,192 per day for all violations in accordance with CWA section 309(d), 33 U.S.C. § 1319(d) and 40 C.F.R. §§ 19.1-19.4, and as increased by EPA pursuant to Federal Civil Penalties Inflation Adjustment Act Improvements Act of 2015;

D. Award Plaintiffs their costs (including reasonable attorney, witness, and consultant fees) as authorized by the CWA section 505(d), 33 U.S.C. § 1365(d); and

E. Award any such other relief as this Court may deem appropriate

Dated: July 14, 2020

        FREDERICK, PERALES, ALLMON & ROCKWELL, P.C.

              By: /s/ Eric Allmon

                 Eric Allmon
             FREDERICK, PERALES,
          ALLMON & ROCKWELL, P.C.
           1206 San Antonio Street
            Austin, Texas 78701
             (512) 469-6000
            (512) 482-9346 Fax
           eallmon@lf-lawfirm.com

            *Counsel for Plaintiffs*